## Case No. 2,373.

CAMPBELL v. UNITED STATES.

[10 Law Rep. 400.]

District Court, W. D. Virginia. Sept. Term, 1847.

CONSTITUTIONAL LAW—INDICTMENT FOR COUNTERFEITING—SUFFICIENCY.

1. The case of Fox v. Ohio, 5 How. [46 U. S.] 410, explained.

2. A law of the United States, prohibiting the circulation of counterfeit coin, is constitutional.
[See U. S. v. ——, Case No. 14,414; U. S. v. Marigold, 9 How. (50 U. S.) 560.]

3. It is not essential to an indictment under such a law, that the offence should be charged to have been committed in territory within the jurisdiction of the United States.

This was an indictment against James B. Campbell, for forging and passing counterfeit coin contrary to the act of congress of March 3, 1825 [4 Stat. 119]. The first count of the indictment charges the defendant with making, forging and counterfeiting the coin in question. No exception is taken to this count, and it need not therefore be farther noticed. The second count charges that the defendant: "On the first day of December, A. D. 1846, at the county of Marshall aforesaid, within the district aforesaid, and within the jurisdiction of the court aforesaid, one piece of false, forged, and counterfeited coin, in the resemblance and similitude of a piece of foreign coin made current by law in the United States, known as the dollar of Mexico, unlawfully, falsely, deceitfully and feloniously did pass, utter, publish, and sell as true, to one Jacob Brantner, with intent to defraud him, the said Jacob Brantner, he the said James B. Campbell, at the time of so uttering, passing, publishing, and selling said piece of coin as aforesaid, then and there, well knowing the same to be false, forged and counterfeited; contrary to the act

4FED.CAS.—76

of congress in such cases made and provided, and against the peace and dignity of the said United States." To this second count of the indictment, the defendant has demurred generally, and has assigned the following causes of demurrer: That the offence is not charged to have been committed, either (1) with intent to defraud the United States, or (2) in fraud of the United States, or (3) with intent to defraud any officer or agent of the United States receiving the same, by virtue of any office or agency in behalf of the United States, or (4) in fraud of any officer or agent of the United States, acting in his official capacity, and authorized to receive the moneys of the United States, or (5) that the said Jacob Brantner was an officer or agent of the United States, and received said counterfeit money by virtue of such office or agency, or (6) that the said counterfeit money was paid to the said Jacob Brantner in discharge and payment of any debt, fine, judgment, liability, covenant or other legal obligation owing or due to the United States, or (7) that it was done by the defendant within and upon territory under and within the jurisdiction of the United States.

George H. Lee, Dist. Atty., for the United States.

George W. Thompson and Moses C. Good, for defendant.

BROCKENBROUGH, District Judge. These various causes of demurrer, except the last, are predicated upon the assumption that the act of passing counterfeit coin, with guilty knowledge and intent to defraud, is not cognizable in the federal courts, unless it be done with intent to defraud the United States, or some of their officers acting under their authority. But the act of congress on which this indictment is framed, punishes the act of passing counterfeit coin "with intent to defraud any body politic or corporate, or any other person or persons whatsoever." The indictment in this case avers, as we have seen, that the act was done "with intent to defraud one Jacob Brantner," and this is therefore a good averment, provided the act of congress, on which the indictment is based, be of any validity. The demurrer, then, if it is sustained, must be supported, not on the ground of the want of any averments required by the law, but on the ground that the law itself is unconstitutional and void.

The power of courts to decide upon the constitutionality of a law is, at all times and under all possible circumstances, a most grave and delicate one, and is not to be exercised without the most mature deliberation. This remark is true even when the law whose constitutionality is drawn in question is of recent origin, and when, if it be held to be beyond the constitutional competency of the legislature, no inconvenience

will result from the judgment of a court pronouncing it null and void. But the question assumes a far deeper importance when, as in the case at bar, the law whose constitutionality is denied, has been in force for a long series of years, without a doubt having been suggested till now that it violated either the letter or spirit of the constitution of the United States.

On the 21st of April, 1806, congress passed a law punishing the offence of passing counterfeit coin, by a heavy pecuniary fine and imprisonment in the penitentiary. This law was re-enacted by the act of March 3, 1825, which is still in force. Thus for a period of more than forty years, this law has been upon the statute book, prosecutions under it have occurred in every state in the union, and the statistics of our penitentiaries would probably show that at this very moment hundreds of convicts are paying the penalty of its violation. Yet though this long acquiescence of the courts of the United States, both state and federal, and the uninterrupted practice under it, must be regarded by this court as strong persuasive authority that the act in question is within the constitutional competency of congress, still it is cheerfully conceded that if this court shall be satisfied that it involves a clear violation of the constitution, it must be pronounced null and void. To determine this important question, we must refer to the fifth and sixth clauses of the eighth section of the first article of the constitution, from which the authority to pass this law, if it exist at all, must be derived. Those clauses are as follows: "The congress shall have power, * * * (5) To coin money, regulate the value thereof, and of foreign coin, and fix the standard of weights and measures. (6) To provide for the punishment of counterfeiting securities and current coin of the United States." By a subsequent clause of the constitution the states are expressly prohibited from coining money, and consequently the power to coin money conferred by the constitution upon congress. is an exclusive power. If these clauses cannot fairly be interpreted as conferring the power upon congress of punishing the offence of passing and uttering counterfeit coin, then the law upon which the second count of this indictment is based, has no warrant in the constitution, and is null and void: and it must follow as a corollary from this conclusion that the demurrer must be sustained. The indictment cannot be supported as a good indictment at common law, for it is fully admitted that this court has no common law jurisdiction of crimes, and can only take cognizance of those which are expressly declared to be such either by the constitution, or laws of the United States, made in pursuance thereof. U. S. v. Hudson, 7 Cranch [11 U. S.] 32; U. S. v. Coolidge, 1 Wheat. [14 U. S.] 416.

If the constitution had simply granted to congress the exclusive power to coin money, and had been wholly silent as to the power to punish the acts of counterfeiting and passing spurious coin in the resemblance of the true legal coin of the United States, I apprehend there could have been no difficulty whatever in determining that congress would have possessed full power to pass all laws which it might deem essential to protect the currency which itself created from debasement and depreciation, for it is an admitted and undoubted principle of construction, that the grant of any specific power by the constitution does, by necessary implication and intendment, import the grant of every other power which is essential to the execution of the power thus expressly granted. An apt illustration of this principle is furnished by that brief clause of the constitution conferring upon congress the power "to establish post offices and post roads." This short and comprehensive clause of the constitution, is the sole foundation on which the authority to pass the numerous detailed and complicated provisions of the post-office laws, defining and punishing offences against the post-office establishment, rests, and yet the constitutionality of these laws has never been called in question, so far as I am advised, in any judicial forum in the United States. It would have been a vain and nugatory thing to say that congress should have the power to establish post-offices and post-roads, if the power to protect the mails from depredation would not necessarily result from the express grant of the principal power. The grant of the power to create, involves the grant of the auxiliary power to preserve and protect the thing created, and hence the grant of the exclusive power "to coin money, regulate the value thereof, and of foreign coin," would necessarily, in the absence of any other clause of the constitution limiting and defining the measure of such protection, draw after it the full power to preserve and maintain the purity of the currency established in virtue of the principal power. by any means deemed essential to that end. It does not admit of question that the power to suppress, by penal enactments. the circulation, equally with the making of counterfeit coin, would be "necessary and proper" to carry the express power of coining money into full effect. I do not understand the soundness of this proposition to be controverted by the counsel for the defendant. but admitting it to be true, it is insisted that the sixth clause of the eighth section, which is quoted above, does in fact by express terms limit the generality of the power which would otherwise result from fair and necessary implication, to the power of punishing the mere act of making counterfeit coin. The language of the constitution in the clause we are considering is, that congress shall have power "to provide for the punishment of counterfeiting the securities and current coin of

the United States." It is said that the term counterfeiting has a perfectly definite signification, and can only be applied, by any just interpretation of its meaning, to the act of making and forging, and not to the act of circulating counterfeit coin. In support of this view, I am referred to the British statutes in force at the time of the adoption of the constitution, discriminating between the offences of counterfeiting and of passing and uttering counterfeit coin, the former being declared treason, and the latter a misdemeanor only. It is admitted by the counsel for the United States that such discrimination existed, but he insists that the term counterfeiting, as used in the constitution, is to be construed as nomen generalissimum comprising every offence against the coin. It is undoubtedly true, as contended by the counsel for the defendant, that at the time of the adoption of the constitution, the term counterfeiting in the English statutes was well understood as applying to the act of making, in contradistinction to the act of circulating, counterfeit coin, and I feel bound by the well-established rules for the construction of statutes, to construe the term in this restricted sense as used in the constitution. When the constitution employs a term of art, derived from the laws of another country, to which a definite signification is attached, as used in those laws, we are bound to regard the constitution as adopting with the term itself such definite signification also. 2 Burr, Tr. 401; U. S. v. Magill [Case No. 15,706]. I am, therefore, of opinion that the power of congress to punish the offence of uttering counterfeit coin is not fairly deducible from any amplification of the term counterfeiting, as used in the clause under consideration. If the power exists at all, it must exist as an implied, and not as an express power.

Now in determining whether the power of punishing the circulation of counterfeit coin may be deduced by fair implication from the express power to punish the act of counterfeiting the coin, we must look to the evil intended to be suppressed or remedied in granting this latter power to congress. It cannot be affirmed that the great end which the constitution had in view in conferring this power, to wit, the preservation of the purity of the circulating medium of the country by the suppression of counterfeits, could be accomplished by denouncing punishment against the counterfeiter, the fabricator of the spurious coin only, and permitting the fraudulent and criminal circulator of the false coin to "go unwhipped of justice." How could it be supposed that the counterfeiting of the coin could be prevented, so long as its circulation ad libitum by the guilty accomplices of the forgers was tolerated by the law? The number of persons engaged in the fabrication of base coin always bears but a small proportion to those employed in its circulation. Besides, the forger may draw around himself the shades of profoundest secrecy whilst prosecuting his unlawful trade. He may plunge into the deepest recesses of the wilderness and exercise his ingenuity in fabricating the instruments by which he hopes to rob and swindle society, and incur but a remote risk of detection. But the accomplices of his guilt, whose aid is necessary to make his labors profitable, cannot thus securely fortify themselves against the vengeance of the law. They must go into the thronged highways of life and come into close contact with their fellow-men to vent their spurious and worthless coin. Their vocation is an eminently hazardous one, and accordingly we find, that while convictions for uttering and passing counterfeit coin are frequent, those for forging are very rare indeed. The suppression of the crime of counterfeiting, then, can only be accomplished by arresting the resulting crime of circulating counterfeit coin. And if it be true that the grant of the power to punish the principal offence of counterfeiting does not, upon any fair and reasonable rule of construction, draw after it the power to punish the secondary offence of passing and scattering counterfeit coin, then it follows that the framers of the constitution have armed the general government with no adequate means of protecting that currency, the creation and regulation of which have been, by express terms, exclusively vested in congress. But I am of opinion that the constitution of the United States is not so imperfect an instrument as the argument supposes, and that the power to punish the circulation, is a fair and necessary incident to the power to punish the making of counterfeit coin. If congress can, by the instrumentality of the law we are considering, arrest the circulation of spurious coin, the suppression of the principal offence of counterfeiting will result as a necessary consequence. The circulation of his base coin is the sole object of the forger; and if that end be defeated he will abandon his trade as profitless. I am well satisfied, therefore, that the act prohibiting the circulation of counterfeit coin is fully within the constitutional competency of congress.

But it is supposed that this conclusion conflicts with the decision of the supreme court of the United States, pronounced in the late case of Fox v. Ohio, 5 How. [46 U. S.] 410. It will be easy, I think, to show that the conclusion to which the views above expressed have conducted me, is entirely consistent with the point resolved by the supreme court in the case last cited. The case was this. Malinda Fox was indicted in a state court of Ohio for "passing and uttering a certain piece of false, base and counterfeit coin, forged and counterfeited to the likeness and similitude of the good and legal silver coin currently passing in the state of Ohio, called a dollar." The indictment was framed upon a law of the state

of Ohio, and the defendant was convicted, and the judgment of the court below was affirmed by the supreme court of Ohio. The defendant took the case by writ of error to the supreme court of the United States under the 25th section of the judiciary act, and the latter court affirmed the decision of the state court of Ohio, thus affirming that the state law of Ohio punishing the offence of passing and uttering counterfeit coin, did not violate the constitution of the United States. This affirmation of the right ˙of a state legislature to legislate on the subject of counterfeit coin does not necessarily involve a denial of the existence of a similar power in congress, except upon the ground that the power is essentially exclusive in its nature, and cannot co-exist in two independent governments at the same time. But this latter proposition is most certainly not established by the case of Fox v. Ohio, for Mr. Justice Daniel, in delivering the opinion of the majority of the court, says: "It has been objected, on behalf of the plaintiff in error, that the states could inflict penalties for the offence of passing base coin, and the federal government should denounce a penalty against the same act, an individual under these separate jurisdictions might be liable to be twice punished for the one and the same crime, and that this would be in violation of the fifth article of the amendments of the constitution, declaring that no person shall be subject for the same offence to be twice put in jeopardy of life or limb. Conceding for the present that congress should undertake, and could rightfully undertake to punish a cheat perpetrated between citizens of a state, because an instrument affecting that cheat was a counterfeit coin of the United States, the force of the objection sought to be deduced from the position assumed is not perceived; for the position itself is without real foundation." Now I understand this language as resting the conclusion of the court upon the concession, made indeed for argument's sake, that the power to punish the offence of passing and uttering counterfeit coin may exist, concurrently, in the two governments, and that in granting it to the federal government, the states did not divest themselves of their preëxisting right to exercise the same power, but retained it among their reserved rights. The denial of the soundness of the position, that if the power were a concurrent one, an individual might be twice punished for the same offence, is understood to refer to the opinion Mr. Justice Washington, delivered in the case of Houston v. Moore, 5 Wheat. [18 U. S.] 31, where it is said, that in case of concurrent criminal jurisdiction between the general government and the states, the sentence of either court may be pleaded in bar in the other, in like manner as the judgment in a civil suit. It is undoubtedly true, however, that in other portions of the same opinion the court do announce propositions

which cannot easily be reconciled with the existence of the power in question in the federal government, but if the view I have taken of the case be correct, these general propositions are mere obiter dicta, and are not entitled to be regarded as authority. I may be permitted to hope that the direct question, whether the power to punish this offence does or does not reside in the federal government, will speedily be presented to the supreme court of the United States, as it is in the highest degree desirable that this grave constitutional question should be authoritatively settled by the highest judicial forum known to the constitution and laws.

I have said that the affirmation of the right of a state to punish this offence did not necessarily involve a denial of a similar power in congress. We have high authority for assuming that the power to punish both the offence of forging and passing counterfeit coin is a concurrent power, to be exercised indifferently by the state and general governments. Such has been the received opinion in Virginia at least from a very early period. The law of this state prohibits, under heavy penalties, the falsely making, forging and counterfeiting any coin current within this commonwealth, whether made current by law or usage. 1 Rev. Code 1819, p. 578. In Rasnick's Case, 2 Va. Cas. 356, the prisoner was indicted in the superior court of Russell for forging "seventy-five pieces of base coin in the likeness and similitude of the good legal coin and current silver coin within the commonwealth, called Spanish milled dollars." The prisoner was convicted and sentenced to ten years imprisonment in the penitentiary, and the judgment of the court below was, after full argument, unanimously affirmed by the general court of Virginia. Now it is true that the constitutional power of the state to pass such a law was not discussed either in the argument at the bar, or in the able opinion of the court, but the very fact that the question was not raised either by the very eminent counsel of the prisoner, or the learned judges who tried the cause, is strong negative proof that in the opinion of both the constitutionality of the law could not be successfully controverted. It would be indeed strange if an objection, which if well taken, would go to the very foundation of the prosecution, could have escaped the scrutiny of both bench and bar. If this view of the question be sound, the conclusion inevitably resulting from it is, that the power to punish the offence of counterfeiting the current coin of the country resides concurrently in the state and general governments, and is not exclusively vested in either, for we have seen that it is vested in congress by express grant. That this view was also entertained by congress is clear from the fourth section of the act of April 21st, 1806, which provides, that "nothing in the act contained shall be construed to deprive the courts of the individual

states of jurisdiction under the laws of the several states, offences made punishable by this act." 4 Stat. 121. Now, while it is conceded that an act of congress cannot confer upon the state courts jurisdiction to exercise the judicial power of the United States, which is exclusively vested by the constitution "in the supreme court of the United States, and in such inferior courts as congress shall from time to time ordain and establish," nor give validity to laws which are repugnant to the constitution of the United States, the fourth section of the act above quoted is still important, as containing a legislative declaration of opinion that it is within the constitutional competency of the individual states to provide, by their own laws, for the punishment of the same offence. Laws almost identical in phraseology, and quite identical in object with the law of Virginia referred to above, have long existed in Massachusetts, New York and Pennsylvania, and it is believed that similar laws are found in the codes of most of the states of the union. Whart. Am. Cr. Law, 323–335.

The last ground of demurrer relied upon is, that it is not averred in the indictment that the offence was committed within and upon territory within the jurisdiction of the United States. There is nothing in this objection, and it was not noticed in the argument at all. The venue is formally and properly laid. I am of opinion that the act in question is constitutional, and that the indictment is framed in conformity with its provisions. The demurrer is, therefore, overruled.